**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**BRAD LAMONT WILLIAMS**                                                                **PLAINTIFF**

**v.**                                      **Case No. 4:12-cv-00187 KGB**

**CITY OF ALEXANDER, ARKANSAS, and**
**HORACE WALTERS, individually and as**
**ALEXANDER CHIEF OF POLICE**                                              **DEFENDANTS**

## OPINION AND ORDER

Plaintiff Brad Lamont Williams brings this action against the City of Alexander and Horace Walters, individually and as Alexander's chief of police, under the First and Fourth Amendments, pursuant to 42 U.S.C. § 1983, and under the Arkansas Constitution, pursuant to the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.* ("ACRA").  Mr. Williams also brings state law claims of malicious prosecution, defamation, outrage, and abuse of process. On September, 30, 2013, defendants filed a motion for summary judgment (Dkt. No. 23).  For the reasons that follow, defendants' motion for summary judgment is granted in part and denied in part.  Summary judgment is granted as to Mr. Williams's claims against the City of Alexander because no policy or custom of the City led to any of the alleged constitutional violations of Mr. Williams's rights and Chief Walters was not a final policymaker.  Summary judgment is denied as to Mr. Williams's § 1983, ACRA, and state law claims against Chief Walters.  Those claims will proceed to trial.

### I.      Factual Background

The following facts are taken from defendants' statement of uncontested material facts (Dkt. No. 25), and Mr. Williams's statement of facts (Dkt. No. 35) and response to defendants'

statements of facts (Dkt. No. 36), unless otherwise specified by citation. The following facts are undisputed unless otherwise noted.

Mr. Williams became a police officer with the City of Alexander in 2006. Chief Walters was hired as chief by former-Mayor Shirley Johnson in June 2010. Mr. Williams claims that he had an excellent performance history with the city; Chief Walters promoted Mr. Williams to Assistant Chief in February 2011.

After Chief Walters was hired by former-Mayor Johnson, Paul Mitchell was elected mayor of Alexander. On July 10, 2011, Mayor Mitchell, apparently unsatisfied with Chief Walters's performance, relieved him of duty. The city council, on July 18, 2011, heard arguments on whether Chief Walters should be reinstated. Mr. Williams supported Mayor Mitchell in his election and continued to do so in his dispute with Chief Walters, which Mr. Williams claims put him at political odds with Chief Walters. Mr. Williams claims that he publically supported Mayor Mitchell at the July 10, 2011, city council meeting, where he testified that Chief Walters harassed and threatened him. The city council reinstated Chief Walters.

Chief Walters admitted in his deposition that, during this time, he "tried to keep [his] contact with Mayor Mitchell and [Mr. Williams] to a minimum because [he] didn't want any problems" (Dkt. No. 35, at 1). Mr. Williams contends that Chief Walters told him that Mr. Williams and Mayor Mitchell were a bunch of cockroaches and warned Mr. Williams that "the gloves are coming off" (Dkt. No. 33, at 4). Further, in approximately July 2011, Chief Walters allegedly told Mr. Williams that he was going to destroy him and held up his fingers to indicate that he had Mr. Williams in his "crosshairs" (*Id.*).

2

### A.     Check Number 1977

On September 3, 2010, Mr. Williams received his normal paycheck for $305.69 (check number 1977). Mr. Williams contends he lost that check. According to Mr. Williams, he often stored his paychecks in the glove compartment of his vehicle, and he misplaced check number 1977 after forgetting that he instead placed it in a friend's glove compartment while on a drive to Bossier City, Louisiana. Former-Mayor Johnson issued Mr. Williams a replacement check, dated September 3, 2010, in the same amount. Mr. Williams cashed the replacement check on September 8, 2010. Approximately one year later, Mr. Williams claims that his friend found check number 1977 in his vehicle and gave the check to Mr. Williams. Mr. Williams, contending that he did not connect check number 1977 to the one he had lost, cashed it on August 9, 2011.

On September 19, 2011, Stacey Cyz, an assistant for the City, reported to the city council at a public meeting, where Chief Walters was present, that Mr. Williams had cashed check number 1977. Mr. Williams explained to the city council that he lost check number 1977 and accidentally cashed it a year later. According to Mr. Williams, the city council determined that Mr. Williams committed no wrongdoing and that he need only repay the money, which he did. Defendants claim that cashing both checks was Mr. Williams's plan all along and that he only repaid the $305.69 because he was caught.

### B.     Two Blue Lights

Sometime during the summer of 2011, Mr. Williams borrowed a pair of blue lights from Tim Dudderar of the Saline County Sheriff's Department for a specific assignment. Mr. Williams claims that he discussed this plan with Chief Walters, who cleared it.

Sometime later, Chief Walters told Jeff Watson, another officer, to locate a set of blue lights and install them into a Dodge Durango. Mr. Watson took the blue lights from Mr. Williams, who told him they belonged to Mr. Dudderar, and installed them on the Durango. Mr. Williams put a piece of tape with Mr. Dudderar's name on the lights and told him where he could retrieve them, and Mr. Dudderar subsequently did so. Mr. Williams contends that Mr. Dudderar's blue lights were the only blue lights ever in his possession.

Chief Walters claims in his deposition, however, that Mr. Williams was involved in the disappearance of a second pair of blue lights that the City of Benton had gifted to the City of Alexander (Dkt. No. 33, at 14). Chief Walters describes these blue lights as round and without serial numbers (*Id.* at 13). Regarding Mr. Williams's involvement, Chief Walters points to a memo, allegedly written by Mr. Watson, that states Mr. Williams told him the two lights "were at his residence on his personal vehicle" (*see* Dkt. No. 34, at 15). Mr. Watson denies writing the memo and claims not to remember the incident happening the way expressed in the memo, though he admits he may have signed it (*Id.* at 13-14). Mr. Watson also denies ever using round lights in police units (*Id.* at 13). Further, Chief Walters claims that he suspected Mr. Williams because officers reported seeing him in the secured area from which the blue lights allegedly went missing (Dkt. No. 33, at 14). Mr. Williams points out that, during Chief Walters's deposition, when pressed on how Mr. Watson purportedly later entered the secured area to discover that the blue lights had disappeared, Chief Walters admitted that Ms. Cyz also had a key and would open the area for any officer who asked (Dkt. No. 33, at 15-16). Chief Walters failed to interview Ms. Cyz to determine which officers had entered the area before the blue lights allegedly disappeared because he "did not see where she would have use for blue lights" (*Id.* at 16).

### C.     Mr. Williams's Arrest

On September 27, 2011, Mr. Williams resigned, having received an offer for a federal job.  Mr. Williams contends that, though unknown to him at the time, Chief Walters had drafted a termination letter for him dated the day before, September 26, 2011.

Approximately three months later, on December 20, 2011, Chief Walters swore an affidavit regarding the cashing of check number 1977.  The affidavit stated:

> On 9/3/2010 you were issued an Alexander police [sic] Department payroll check # 1977.  This check was drawn on US Bank in the amount of $305.69.  You stated on 9/3/2010 you had misplaced or lost payroll check #1977.
> On 9/3/2010, the same day you were issued your original payroll check #1977 [sic], you were re-issued a replacement payroll check; the re-issued check number was check #1986.  This check was also drawn on US Bank in the amount of $305.69.
> On 8/9/2011, you cashed the original first issued payroll check# [sic] 1977 in the amount of $305.69 at Hess Convenient Store located at 13325 First Street in Alexander Arkansas [sic].  Your written statement to me indicated 'I honestly didn't know I had even lost check # 1977.'  This action constitutes Theft of Property.

In his deposition, Mr. Williams acknowledged that, other than the conclusion that "[t]his action constitutes Theft of Property," every factual statement regarding the cashed checks in the affidavit is true.  Chief Walters in the affidavit also stated:

> On 9/22/11 I instructed officers to install blue lights on an unmarked APD vehicle.  Officers were unable to locate two (2) blue lights that were secured in the APD storage area.  These lights were visible in the secured area of the Alexander Police Department on 9/21/2011.  You were called and asked the location of the blue lights.  You told officers that they were in your personal vehicle at your home.  You were never given permission to take possession of this property.  This constitutes theft of property.  (Misdemeanor)

Mr. Williams claims that the only blue lights he possessed were those Mr. Dudderar loaned him, which did not belong to the City.  A magistrate judge issued a warrant for Mr. Williams's arrest on misdemeanor charges of theft, and Mr. Williams was arrested on the warrant.

After Mr. Williams's arrest, Mayor Mitchell asked the prosecuting attorney to dismiss the case because Chief Walters "did not have the authority and was vindictive against" Mr. Williams (Dkt. No. 34, at 100).   The prosecuting attorney then dropped the case against Mr. Williams (*Id.*).

## II.      Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.   Fed. R. Civ. P. 56;   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.   *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."   *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).   However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.   *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).   The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.   *Celotex Corp.*, 477 U.S. at 323.   The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.   *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).   "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.     Fourth Amendment, First Amendment, and ACRA Claims

"To establish a violation of § 1983, the plaintiff must show the deprivation was (1) a right secured by the Constitution and laws of the United States, and (2) caused by a person or persons

acting under the color of state law." *Tipler v. Douglas Cnty.*, 482 F.3d 1023, 1027 (8th Cir. 2007). There is no dispute that Chief Walters, as a state law enforcement officer, acted under the color of state law in arresting Mr. Williams.

Regarding the first element, "[t]he Fourth Amendment includes the right to be free from arrest without probable cause." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999). Similarly, the First Amendment includes the right to be free from retaliatory arrest, a necessary element of which is "[l]ack of probable cause." *See Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012) (alteration in original) (internal quotation marks omitted) (citing *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010)). Thus, if Mr. Williams can show that Chief Walters deprived him of his Fourth and First Amendment rights, he has established a violation of § 1983. Further, Mr. Williams's claims of "unlawful arrest" and "violation of freedom of speech" under the Arkansas Constitution pursuant to the ACRA also require the lack of probable cause. *See Smith v. Insley's Inc.*, 499 F.3d 875, 882 (8th Cir. 2007) ("The ACRA provides a cause of action for damages for 'the deprivation of any rights . . . secured by the Arkansas Constitution' by any person acting under color of state law," and "further provides that, in construing this section, 'a court may look for guidance to state and federal decisions interpreting . . . 42 U.S.C. § 1983'" (quoting Ark. Code Ann. § 16-123-105)). For these reasons, Mr. Williams's § 1983 and ACRA claims all turn on whether probable cause existed and thus will be analyzed together.

"Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense.'" *Copeland v. Locke*, 613 F.3d 875, 879 (8th Cir. 2010) (alteration in original) (quoting *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005) (quoting *Hannah v. City of*

*Overland*, 785 F.2d 1385, 1389 (8th Cir. 1986))).  Mr. Williams claims that probable cause did

not exist because Chief Walters, upon submitting the affidavit for arrest, included and omitted

information either to mislead intentionally or in reckless disregard of the truth.  To prevail on his

challenge to Chief Walters's warrant affidavit based on intentional or reckless

misrepresentations, Mr. Williams must show:

> 1) that a false statement knowingly and intentionally, or with reckless disregard
> for the truth, was included in the affidavit, and 2) that the affidavit's remaining
> content is insufficient to establish probable cause.  The same analysis applies to
> omissions of fact.  The defendant must show:  1) that facts were omitted with the
> intent to make, or in reckless disregard of whether they thereby make, the
> affidavit misleading, and 2) that the affidavit, if supplemented by the omitted
> information, could not support a finding of probable cause.

*United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995) (quoting *United States v. Humphreys*,

982 F.2d 254, 258 n.2 (8th Cir. 1992) (citing *United States v. Lueth*, 807 F.2d 719, 726 (8th Cir.

1986); *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986))).  Regarding omissions, Mr.

Williams "must show that the omitted material would be 'clearly critical' to the finding of

possible cause."  *Id.* at 314 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)

(quoting *Reivich*, 793 F.2d at 961)).

### A.    Probable Cause Regarding Check Number 1977

As to the allegations regarding check number 1977, Mr. Williams offers as omissions of

fact: (1) that the governing body of the City publically exonerated Mr. Williams at the September

19, 2011, city council meeting and (2) that, at that city council meeting, Mr. Williams explained

that he mistakenly cashed both checks because he lost the first before finding it a year later.

Moreover, the affidavit did not explain that Mr. Williams, after being notified that he had cashed

two checks for the same pay period, repaid the amount of check number 1977 to the City, which

he had agreed to do at the city council meeting.  Chief Walters was aware of all of these facts

because he attended the council meeting.   The Court determines that disputed genuine issues of material fact preclude the Court's granting summary judgment in favor of defendants on this claim.

First, based on the record viewed in the light most favorable to Mr. Williams, the Court determines that a reasonable juror could conclude that Chief Walters omitted the above facts with an intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading.   *Gladney*, 48 F.3d at 313.   Essentially, Chief Walters's intent or reckless disregard can be concluded from Mr. Williams's allegation that the two were at political odds over Mr. Williams's support for Mayor Mitchell and the resulting altercations.   For example, after Mayor Mitchell suspended Chief Walters, Mr. Williams contends that Chief Walters told him that Mr. Williams and Mayor Mitchell were a bunch of cockroaches and warned Mr. Williams that "the gloves are coming off" (Dkt. No. 33, at 4).   Further, in approximately July 2011, Chief Walters allegedly told Mr. Williams that he was going to destroy him and held up his fingers to indicate that he had Mr. Williams in his "crosshairs" (*Id.*).

Quoting *Foster v. Metropolitan Airports Commission*, defendants argue that Chief Walters's "subjective reason for making the arrest is irrelevant to a fourth amendment challenge to the arrest."   914 F.2d 1076, 1079 (8th Cir. 1990).   However, *Foster*, and other cases cited therein, did not discuss claims of officers intentionally or recklessly including or omitting facts in their affidavits but whether otherwise valid probable cause could be defeated by the underlying motivations for the arrest.   *Id.* at 1079-81 (discussing *Jureczki v. City of Seabrook*, 760 F.2d 666 (5th Cir. 1985), and *Linn v. Garcia*, 531 F.2d 855 (8th Cir. 1976)).   Conversely, here the question is whether probable cause existed only because of Chief Walters's intentional or reckless omissions of fact.   In other words, more than Chief Walters's "evil intent or bad

faith" is disputed; the validity of the warrant itself and the underlying probable cause are questioned because of the omissions of certain facts in the affidavit. *See Jureczki*, 760 F.2d at 669 ("The evil intent or bad faith of an officer in obtaining or executing a *valid* warrant cannot transmute an arrest made *with probable cause* into a section 1983 violation." (emphasis added)). And in fact, *Foster* recognized that it may be appropriate to consider the arresting officer's motive in other cases, such as where an officer misuses the state warrant process "to settle a private dispute" or in an "action for malicious prosecution where one of the elements the claimant *must* prove in order to prevail is that charges were brought because of some personal animosity." *Id.* at 1080-81. Such an exception also applies here because Chief Walters's motivation is relevant to whether he intentionally or recklessly omitted facts.

Second, viewing the record evidence in the light most favorable to Mr. Williams, a reasonable juror could conclude that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *Gladney*, 48 F.3d at 313. In Arkansas, a person commits theft of property if he or she knowingly:

> (1) [t]akes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or (2) [o]btains the property of another person by deception or by threat with the purpose of depriving the owner of the property.

Ark. Code Ann. § 5-36-103. If the affidavit had included the facts that the City had publically absolved Mr. Williams of all wrongdoing and that Mr. Williams had paid back the amount of check number 1977, a reasonable juror could conclude that a prudent person would not be justified in believing Mr. Williams acted with the "purpose of depriving the owner of the property." *See id.*; *Copeland*, 613 F.3d at 879.

Defendants argue that Mayor Mitchell and the city council are not the victims and, regardless, forgiveness by a victim or repayment of ill-gotten gains by a perpetrator after caught, do not negate probable cause.  While perhaps true that prosecutions for crime are not brought by or for the victim, but in the name of the people of the State and City, defendants' arguments miss the mark.  The omitted information does not stand merely for the proposition that Mr. Williams was forgiven and repentant for his crime; the omitted information also may stand for the proposition that Mr. Williams never possessed the intent required for the crime—with the "purpose of depriving the owner of the property."   Mayor Mitchell and the city council concluded that a crime never occurred because of Mr. Williams's explanation, and both that conclusion and the explanation were omitted from the affidavit.  Viewing the record evidence in the light most favorable to Mr. Williams, a reasonable juror could conclude that the affidavit, supplemented with that information, could not support a finding of probable cause based on Mr. Williams's lack of criminal intent.

Further, Mr. Williams seems to argue that, even without the omitted facts, the affidavit did not support probable cause.  Specifically, he argues that: he did not make an unauthorized transfer because the only act he purposefully did was to cash checks made out to him for which the City did not stop payment; and he did not obtain the property of another because the City owed money to him for previous work, as he does not get paid at the end of every day. Defendants respond that, regardless of whether both checks were made out to Mr. Williams, he had already been paid for the time period in question and was not authorized to receive two paychecks for the same time period.  Further, defendants argue that the City never gave Mr. Williams permission to cash check number 1977 as an advance on future wages owed.  Because the Court has already determined that the omitted facts would allow a reasonable juror to

conclude that probable cause did not exist as to the intent requirement, the question of whether the affidavit without these omitted facts supported probable cause is not reached by the Court. *See Gladney*, 48 F.3d at 313 (finding that a challenge to probable cause is successful if the challenger shows "1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause").

## B.    Probable Cause Regarding Two Blue Lights

Mr. Williams claims that Chief Walters knowingly and intentionally, or with reckless disregard for the truth, included in the affidavit that "[Mr. Williams was] called and asked the location of the blue lights. [Mr. Williams] told officers that they were in [his] personal vehicle at [his] home."  In his deposition, Chief Walters claims that he relied upon Mr. Watson's verbal statements and his written and signed memo for the inclusion of those statements in his affidavit. Specifically, Mr. Watson's alleged memo states that he contacted Mr. Williams and that Mr. Williams told him the two lights "were at his residence on his personal vehicle" (Dkt. No. 34, at 15).  The Court denies defendants summary judgment as to this claim.

First, based on the record evidence viewed in the light most favorable to Mr. Williams, the Court determines that a reasonable juror could conclude that the above statements were false. Mr. Watson swore in an affidavit that he did not write the memo, does not remember signing the memo, and does not remember the incident happening the way expressed in the memo.  Mr. Williams also claims that the only blue lights he possessed belonged to Mr. Dudderar, who affirms Mr. Williams's claim; Mr. Watson states that these are the lights Chief Walters asked him to find and install.  Still, Chief Walters insists that the blue lights in question were not those belonging to Mr. Dudderar but blue lights that the City of Benton had gifted to the City of

Alexander; he describes these lights as round and without serial numbers.  However, paperwork accompanying the gifted lights stated their serial numbers, and Mr. Watson denies having knowledge of any round lights.  Further, Chief Walters claims that he suspected Mr. Williams because officers saw him in the secured area from which the blue lights allegedly went missing and to which only Chief Walters had the key.  But when pressed on how Mr. Watson later entered the secured area to discover that the blue lights had disappeared, Chief Walters guessed that Ms. Cyz, who also had a key and would open the area for any officer who asked, let him in. Chief Walters then admitted that he failed to interview Ms. Cyz to determine which officers had entered the area before the blue lights allegedly disappeared because he "did not see where she would have use for blue lights."

Second, a reasonable juror could conclude that Chief Walters included the allegedly false statements knowingly and intentionally, or with reckless disregard for the truth, in the affidavit. *Gladney*, 48 F.3d at 313.  To begin, the evidence regarding the political odds between Chief Walters and Mr. Williams, discussed above, also is relevant here.  Further, a reasonable juror could conclude from the existence of Mr. Watson's alleged memo and Mr. Watson's denial of writing it that Chief Walters fabricated the memo to support his affidavit.  Lastly, contradictions between Chief Walters's and Mr. Watson's descriptions of the alleged events, as well as internal contradictions in Chief Walters's own description of the alleged events, could lead a reasonable juror not to believe Chief Walters's testimony.

Third, a reasonable juror could conclude that the affidavit's remaining content is insufficient to establish probable cause.  Without the statements above, nothing ties the alleged disappearance of two blue lights belonging to the City to Mr. Williams.  There cannot be probable cause as to Mr. Williams's alleged theft of property regarding the blue lights without

evidence that he took or exercised unauthorized control over or made an unauthorized transfer of an interest in the property of another person, or obtained property of another person. *See* Ark. Code Ann. § 5-36-103. Further, defendants do not claim that probable cause existed regarding the blue lights but instead argue that "so long as probable cause existed to arrest the Plaintiff on one charge [the cashed checks], it is irrelevant that there may not have been probable cause to arrest him on the other charge [the blue lights]" (Dkt. No. 38, at 1 (citing *Foster*, 914 F.2d at 1080). As discussed above, however, there is a genuine issue of material fact as to whether probable cause existed as to the cashed checks.

## IV.     Qualified Immunity

A government official sued in his individual capacity may raise the defense of qualified immunity. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (internal quotation marks omitted). To determine if a qualified immunity defense applies, the Court must conduct a two-prong inquiry by examining: "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right and (2) whether the constitutional right violated was clearly established at the time of defendant's alleged misconduct." *Id.* (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

Chief Walters is not entitled to qualified immunity. As discussed above, a reasonable juror could conclude that the facts alleged by Mr. Williams make out a violation of his

constitutional rights because there are genuine issues of material fact regarding whether probable cause existed.  *See Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993).  Further, the constitutional rights to be free from arrest without probable cause and from retaliatory arrest are clearly established.  *See Lambert*, 187 F.3d at 935; *Galarnyk*, 687 F.3d at 1076.  However, officers are entitled to qualified immunity if they arrest a suspect under an objectively reasonable mistaken belief that they have probable cause to do so.  *Copeland*, 613 F.3d at 880.  Thus, "the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right."  *Id.* (8th Cir. 2010) (alteration in original) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)).  While a neutral magistrate issuing a warrant "is the clearest indication that [an officer] acted in an objectively reasonable manner," it "does not end the inquiry into objective reasonableness."  *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012).  An exception exists where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Court finds that, viewing the record in the light most favorable to Mr. Williams, not even "arguable probable cause" existed as to Mr. Williams's theft of the cashed checks or the blue lights, because Chief Williams should have known that the arrest violated Mr. Williams's clearly established rights.  *See id.*  With the facts known to Chief Williams, "no reasonably competent officer would have concluded that a warrant should issue."  *See id.*  This is because, for the reasons stated above, a reasonable juror might conclude that the omitted information regarding the cashed checks suggests that Mr. Williams never possessed the intent required for the crime—with the "purpose of depriving the owner of the property"—and, without the

allegedly false included information regarding the blue lights, a reasonable juror might conclude there is no evidence that Mr. Williams took or exercised unauthorized control over, made an unauthorized transfer of an interest in, or obtained two blue lights that belonged to another, other than those that Mr. Dudderar loaned him.  *See* Ark. Code Ann. § 5-36-103.

Defendants argue that, because Mr. Williams acknowledged that the facts contained in the affidavit regarding the cashed checks were true, and the magistrate judge agreed that those facts constituted probable cause, there can be no serious argument that Chief Walters did not have at least "arguable probable cause."   However, defendants ignore that "clearly critical" omitted information of which Chief Walters was aware would have, if included, caused the affidavit not to support a finding of probable cause.  *Gladney*, 48 F.3d at 314.  For these reasons, this Court concludes the magistrate judge's finding of probable cause carries no weight in this analysis because, presumably, he or she was not aware of the omitted facts.

## V.      Municipal Liability

To establish § 1983 liability against the City, Mr. Williams must establish that a violation of his constitutional rights occurred and that a policy or custom of the city was a moving force behind the alleged constitutional violation.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  "Policy or custom" can come from the decisions of any officials "whose edicts or acts may fairly be said to represent official policy." *Id.*  "[T]he trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue" by "[r]eviewing the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks omitted).  Accordingly, to determine

whether a local official is a final policymaker, the trial judge must examine "(1) state and local positive law and (2) state and local custom or usage having the force of law." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1215 (8th Cir. 2013) (quoting *Jett*, 491 U.S. at 737) (internal quotation marks omitted).  "[W]here the right to review a decision is retained, there has been an incomplete delegation of authority, and municipal liability may not attach; on the other hand, an absolute delegation of authority may implicate the municipality."  *Ware v. Jackson Cnty.*, 150 F.3d 873, 885 (8th Cir. 1998).

Parties agree that, under normal circumstances, a chief of police for a first class city (such as Alexander) is not a final policymaker under Arkansas law because he is under the direction of a mayor, who has final authority when official police policy is made.  *See S.S. ex. rel. A.S. v. Bono Police. Dep't*, 2008 WL 4493065, at *3 (E.D. Ark. Oct. 1, 2008) (citing Ark. Code Ann. § 14-52-202(a) (stating that chiefs of police in cities of first class "shall execute all process directed to him by the mayor"); Ark. Code Ann. § 14-52-203(a) (stating that "the duty of the chief of police and other officers of the police department shall be under the direction of the mayor)).  Mr. Williams, however, argues that the city council's reinstatement of Chief Walters after Mayor Mitchell tried to relieve him of duty took Mayor Mitchell "out of the loop" and made Chief Walters the final policymaker.

The Court disagrees and determines that Chief Walters was not a final policymaker. Chief Walters, though reinstated, was still subject to Mayor Mitchell's review pursuant to the Ark. Code Ann. §§ 14-52-202(a), 14-52-203(a).  Because Chief Walters's affidavit had not yet been sworn, the city council did not implicitly endorse it by reinstating him, and Mayor Mitchell presumably could have relieved or otherwise disciplined Chief Walters again if his post-reinstatement conduct merited it, as there is nothing in the record before the Court to suggest

otherwise.   And in fact, Mayor Mitchell reviewed Chief Walters's decision to arrest Mr. Williams and overturned that decision by talking to the prosecutor, who subsequently dropped the criminal charges (Dkt. No. 34, at 100).

      **VI.**    **State Law Claims**

         **A.**    **Malicious Prosecution**

Arkansas law requires a plaintiff claiming malicious prosecution to prove: "(1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages." *Brooks v. First State Bank, N.A.*, 374 S.W.3d 846, 849 (Ark. 2010).

Defendants argue that summary judgment should be granted because probable cause existed.  However, as discussed above, a reasonable juror could conclude that probable cause did not exist.  Further, Mr. Williams argues that Chief Walters acted maliciously by falsifying and omitting information in his affidavit.  The Arkansas Supreme Court has described malice as "any improper or sinister motive for instituting the suit." *Cordes v. Outdoor Living Center, Inc.*, 781 S.W.2d 31, 33 (Ark. 1989) (quoting *Foster v. Pitts*, 38 S.W. 1114 (1987)).  Further, "[m]alice may be inferred from lack of probable cause." *Id.*  The Court determines that, based on the record viewed in the light most favorable to Mr. Williams, a reasonable juror could conclude that Chief Walters acted maliciously.  Accordingly, this claim will proceed to trial.

         **B.**    **Defamation**

To establish a claim for defamation under Arkansas law, Mr. Williams must prove that: "(1) he sustained damages, (2) that [defendants] published a false statement concerning him, (3) that the statement of the fact was defamatory, (4) that [defendants] acted with knowledge that the

statement was false, and (5) that the publication of the statement was a proximate cause of damages." *Calvary Christian Sch., Inc. v. Huffstuttler*, 238 S.W.3d 58, 69 (Ark. 2006).

First, defendants argue that Chief Walters did not know that any statements in the affidavit were false. Mr. Williams counters that Chief Walters had to have known his statements about the blue lights were false because Mr. Watson, whose report Chief Walters identified in his deposition as the basis for his statements, denies having ever made the report. The Court concludes that a genuine issue of material fact exists as to whether Chief Walters knew his statements about the blue lights were false.

Second, defendants argue that, even if Chief Walters knew that Mr. Williams did not steal two blue lights, that statement did not cause Mr. Williams damage because there was an additional, true statement that he stole $305.69. However, as discussed above, whether there was probable cause that Mr. Williams intended to steal $305.69, and thus whether the statement that cashing check number 1977 "constitutes <u>Theft of Property</u>," is disputed by the parties. Accordingly, the question of whether the statement regarding the two blue lights damaged Mr. Williams is one for the jury.

Moreover, even if the conclusion that Mr. Williams stole $305.69 is true, there is still a genuine issue of material fact as to whether the statements regarding the blue lights further harmed his reputation. Under Arkansas law, an action for defamation requires proof of reputational injury. *Little Rock Newspapers, Inc. v. Fitzhugh*, 954 S.W.2d 914, 920 (Ark. 1997). "Proof of damage may include: (1) Proof that people believed the plaintiff to be guilty of the conduct asserted in the publication, or (2) proof that people thought less of plaintiff as a result of the publication's defamatory content." *Id.* at 921. There are genuine issues of material fact in dispute regarding alleged damages and the extent of alleged damages arising from the theft

allegations.   There is no evidence that Mr. Williams's reputation was so low as to make him "libel-proof," or not damageable, at the time Chief Walters swore the affidavit, which seems to be the defense underlying defendants' argument on this point.   For these reasons, summary judgment as to Mr. Williams's defamation claim is denied.

### C.   Outrage

Under Arkansas law, the tort of outrage requires plaintiff to establish that:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it

*Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 403-04 (Ark. 2002) (internal quotation marks omitted).

Defendants argue that charging someone with a crime is not "extreme and outrageous." However, Mr. Williams argues that Chief Walters did much more.   Specifically, Mr. Williams argues that, if a reasonable juror believes that Chief Walters lied to cause Mr. Williams to be arrested, to go to jail, and to be suspended from his new federal job, then a reasonable juror could conclude that Chief Walters acted "outside the bounds of decency in a civilized society" (Dkt. No. 33, at 18).   Based on the record here, the Court agrees, and thus Mr. Williams's outrage claim will proceed to trial.   *See* Restatement (Second) of Torts § 46 cmt. e (1965) ("The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position . . . which gives him actual or apparent authority over the other, or power to affect his interests. . . . In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position."); G*asho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994) (allowing plaintiff to bring emotional distress claim where there was

no probable cause for his arrest and evidence suggested malicious intent); *Pitt v. District of Columbia*, 491 F.3d 494, 506 (D.C. Cir. 2007) (finding that a reasonable jury could have found outrageousness where plaintiff was arrested based on an affidavit that "contained several glaring omissions and at least one false statement" and evidence suggested that police tampered with evidence to link plaintiff to the scene of the crime).

### D.    Abuse Of Process

Under Arkansas law, the elements for an abuse of process claim are: "(1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding." *Nat'l Bank of Ark. V. River Crossing Partners, LLC*, 385 S.W.3d 754, 761 (Ark. 2011). "The key to the tort [of abuse of process] is the improper use of process after its issuance to accomplish a purpose for which the process was not designed." *Id.* at 761-62. Defendants argue that, because "the charges were immediately dropped by the prosecutor, there can be no claim that the process was abused" (Dkt. No. 38, at 7). However, "service of an arrest warrant may constitute abuse of process," if the other elements are met. *Harmon v. Carco Carriage Corp.*, 895 S.W.2d 938, 940-41 (Ark. 1995) (citing *Union Nat'l Bank v. Kutait*, 846 S.W.2d 652 (Ark. 1993)). Further, Mr. Williams points out that an abuse of process claim could survive even if probable cause for his arrest existed. *See Baker v. OTASCO*, 344 F. Supp. 780, 784 (W.D. Ark. 1972). Accordingly, summary judgment is denied regarding Mr. Williams's abuse of process claim.

\* \* \*

In summary, Mr. Williams's § 1983 claim, ACRA claim, and state law claims of malicious prosecution, defamation, outrage, and abuse of process against Chief Walters will proceed to trial.  Mr. Williams's claims against the City of Alexander are hereby dismissed.

IT IS SO ORDERED this 8th day of November, 2013.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE